The narrow issue that's presented to this court by this petition is whether there are any due process concerns at stake with regard to the Army's invocation of this last-chance agreement. Both this court and the Merit Systems Protection Board have been guided by a very salutary principle of due process and basically that principle is that the board may not uphold an agency disciplinary action on the basis of misconduct different than the misconduct that was presented before the agency. No, the misconduct that the agency claims is the breach of the last chance agreement. We have the original misconduct subject to an original removal matter. That's not an issue here. We have a subsequent last-chance agreement. The agency now claims a breach of the last-chance agreement. It provides notice to the employee of what that breach is. The conduct relating to that breach is not the subject of a separate charge. That's simply a condition that was specified in the last-chance agreement and the question is whether the fact that that condition of the agreement was breached. I agree. It's a contingent event and I'm not arguing that it is to be treated as a separate and new charge. But then where does the due process issue arise? Because your client did have due process in the original charge. That's correct, but where the agency makes a claim of a breach of the last-chance agreement or that some contingent event occurred and if by virtue of that contingent event he can lose his job, lose his cognizable property interest in his continuing right to employment, he would have an opportunity to have notice of what that breach is and an opportunity to respond. But didn't that occur here? He was notified that there was a breach and that that breach, and the letter was quite specific, and he was then given an opportunity to present his side of the case and be heard. And then the agency made a determination and the board in due course reviewed that. Yes, he certainly did. And during the course of the hearing, he met the challenge of the breach and the agency invoked a particular ground claiming a breach. At the hearing, he prevailed and was able to demonstrate that in fact that breach did not occur and the agency appealed to the higher board and the board, totally indifferent to the grounds originally invoked by the agency, came up with their own grounds, new grounds. So your argument, Mr. Miller, is not so much – you're not saying he was deprived of due process by the agency here, but rather by the board in the sense of the A.J. who was determined that the charge was acting in a way that caused embarrassment and so forth to the agency. The A.J. says Mr. Lizio was, quote, rude, obnoxious, close quote, but she found he didn't cause embarrassment to the agency, which was charged. Then the full board says, fine, we accept the finding that it wasn't causing embarrassment, but they let him go just because it was rude and obnoxious. Your complaint's with the board. That's correct. You don't have any complaint with the agency? No quarrel with the agency. The board, though, introduced this new charge. We didn't have notice of it. We didn't have an opportunity to respond to it. We couldn't marshal our assets and our case and our scarce resources to meet it, our witnesses and everything else. We see for the first time in a summary fashion in the board decision. That is the very heart of this case. You agree with the general law that if in a situation like this, if it's established that the employee, in this case Mr. Lizio, breached the agreement, that the result is that the prior removal action that was held in the banks automatically kicks in and he's out without any right to challenge that action? Correct. That's the legal frame. There's no issue with respect to that. And I'm not arguing that upon a claim breach of the LCA, the last chance agreement, that he's even entitled to this cumbersome, comprehensive statutory notice under section 7513 that Congress has established. I'm only arguing that I want minimal notice. You're looking at what we said in cases like Link and Gilbert and others that he has to, when he's charged with a breach of the agreement, he has to establish before the board that he did not breach the agreement. That's what you're saying. Yes. He has the burden of proof ultimately to establish poor jurisdiction by demonstrating that he didn't breach the agreement. And you're saying the AJ found that he met that burden because he established he didn't do what, he didn't commit the breach. That's correct. And the agency appealed to the board and the board of course came up with a completely wholly different rationale that we never had an opportunity to even address. And the premise of the board's claim is that, well, due process doesn't even apply to last chance agreements. Isn't though, isn't what he was, I guess you could say that what he was, what the board found was kind of a lesser included offense, wasn't it? Put it in a criminal sense. It may be, but we wouldn't have had by any stretch of the imagination, any reason to believe that it was embraced by the charge that was claimed by the agency. The agency's claim had an element of unprofessionalism, which caused embarrassment to the army. Which led the general to call and complain about what happened. Yes. The retired general at GE. Yes, but there are two very important material elements. Apparently, neither of them were met by proof in this case. So while we go in under one theory on appeal without notice or an opportunity to be heard, we find that was summarily removed on another theory. So you're not challenging any of the, as I understand it, any of the board's findings of fact? No, no, no. Obviously, if we knew that rude and obnoxious behavior was at the heart of this case, we would have obviously approached the testimony a lot differently. But we had no knowledge of any of this. So the board seems to be claiming that the constitutionally mandated due process, the minimal due process, seems to have no application whatsoever to a party's performance under a last chance agreement. It seems to me, when I looked at the board's decision, that they were confusing or conflating your cases concerning whether statutory notice is due in these cases with minimal due process. Because I believe Iran is referring to a series of cases where if there's a contingent event that occurs with a last chance agreement, and the contingency occurs, and the old removal action is reinstated, there's no need to give him or her a comprehensive statutory notice. And there's no quarrel with that. However, the employee certainly is entitled to at least minimal notice of what this breach is. You're bringing your due process argument within the context of the cases that we have had involving last chance agreements. That's what we said in the Lincoln-Gilbert case. Yes. In all those cases in which the court has held that the occurrence of a contingent event does not trigger new notice, those are not due process cases. Those are just statutory notice cases. In all those cases, Gerani, Baker, and all the rest of them, those employees had notice of the breach. They had a right to protest it before the agency, and they had arbitration or board hearings regarding those breaches. So the idea of the minimal due process issue never came up. We've had none of that. None of that. We've had no reasonable notice of what this board ultimately relied upon as a basis for the breach. That's all I was afraid of promptly. Let's hear from the court. Mr. Gerani. Good morning, Your Honors. May it please the court. As the court appears to recognize, and Mr. Lizzio apparently concedes today, this case is not about notice or due process before the agency. Rather, it concerns Mr. Lizzio's dissatisfaction with the way in which the full board interpreted the term misconduct, as used in this last chance agreement. Mr. Lizzio was clearly on notice about what conduct was at issue. He defended himself before the administrative judge by having testimony about what happened the day that he went to the General Electric facility and how he conducted himself. His real complaint is that the board used a different standard to judge that misconduct, interpreted that term differently than the administrative judge did. But a last chance agreement is a contract. This court has already so held. And when the board interprets the contract terms, it does so according to ordinary principles of contract interpretation. It interprets the contract de novo using the principle that if the words are plain and unambiguous on their face, then the board can interpret them accordingly. That's what the board did in this case. It found that the term misconduct was plain and unambiguous and encompassed Mr. Lizzio's conduct. Mr. Lizzio, as I understand it, you're correct. I mean, Mr. Unger says, I'm sorry, Mr. Berger, my apologies. Mr. Berger, my apologies. Mr. Berger says that agency treated me entirely fairly. I got completely in the process. He's saying, as I understand it, that in cases like Lincoln's, we have said that when there's a last chance agreement and the employee is charged with breaching the last chance agreement, he or she has to establish that they did not breach the agreement, correct? That's correct. And here he says, and it was found in the establishment before the board, that he was charged with breaching the last chance agreement by engaging in conduct that embarrassed the agency. So he's saying, I had to go before the board and prove that I didn't embarrass the agency, right? That's what he says, Your Honor. That's what the board, I mean, the AHA found that's what he was charged with. But calling the- I mean, that's what he was charged with. And she said it was found, and it didn't seem to be disputed, that he was charged with engaging in conduct that caused embarrassment to the agency. She said he didn't do that. But then the board said, no, yes, we're not ordering that finding, but they hit him with something else. Isn't there a little bit of a problem here in that he was charged with X as the breach, so he had to go and say, I didn't do X. But then on review, they said, no, you didn't do X, but you did Y. That's the- There's- No following the agencies. Right, right. I understand. But there's a misinterpretation that flows from the characterization of the grounds for invoking the last chance agreement as a charge. And that's what leads to the ERA-MH results by the administrative judge. It's not a charge. He's not being charged with something. It's not, I heard Mr. Luzio's counsel call it a contingency that allows him to be removed. That's incorrect. What we have is a last chance agreement that waives appeal rights if certain things happen. That's all it does. It's not a new charge. It's not entirely notice of the charge. The agency doesn't have to stick to the charge. The only thing that this case involves- There has to be a breach. There has to be a breach because if there is not a breach, then the board has jurisdiction over what would in effect be a removal action. But if there is a breach by Mr. Luzio, the board does not have jurisdiction. The only issue before the board is was there a breach. The board looks at the agreement. The agreement says if there's misconduct, the waiver of appeal rights is good and we enforce the agreement. The only issue before the board is was there misconduct under the terms of the agreement. The agency basically, the only thing the agency had to do under this agreement was tell Mr. Luzio we're expecting a removal under this agreement. They went a little further. They said it's for misconduct. They included some other information in there. They didn't need to do that. It became his obligation to come to the board and say nothing in this agreement was breached by me. I didn't commit any misconduct. I think the legal framework, I agree, but the difficulty is misconduct is such a kind of a broad term. It can involve anything from maybe being a little bit curt with someone at the water cooler to conduct that we have here involving people outside the agency. And they did charge him. It was developed to the board that the basis of the charge was causing embarrassment. And that's what the AHA found. The board on review found that's what he was charged with. And that's what he defended against. But then they came up with a different rationale on the petition. That's what I think is troubling. Don't follow the agency. Again, it's really just what is the board required to rely on when it's construing a term in a contract? Now, when I argue contract cases before different courts, I don't know going into it what the court is eventually going to decide is the proper interpretation of a particular contract term. I argue for one interpretation. The other side usually argues for the other interpretation. And we both hope that the court will pick our interpretation. But the court always has the right to interpret it to no vote on its own grounds. You asked rules about review of administrative agencies. And then the review is on the same ground on which the agency acted. So it isn't as if one goes to the Supreme Court and pronounces what the law is. Well, first of all, this court has said that those rules don't apply to the board. But maybe that applies when the board is reviewing charges against an employee. Which rules don't apply? Well, the board explained in its decision that this court has already held that the standard review that requires a court reviewing an administrative action to stick to the grounds provided by the administrative agency don't apply to board decisions. But even if they did, in this case, again, the distinction is that the board isn't reviewing a charge. The board is determining its own jurisdiction and interpreting a contract term. Shouldn't they be determining whether or not it's breached? Exactly. They're determining whether it's breached according to the terms of the contract. And it interprets those terms de novo. It's not bound by the way that the agency interprets the terms or by the way that the employee would interpret those terms. I think if I give sort of a hypothetical, it will put this in a little bit more clearer light. In this case, there was a trial. There was a jury, yes, on the jurisdiction ledger. There was a trial as to whether or not there was a breach. Yes. And I've added, as to this sort of defendant, he prevailed. The administrative judge found in his favor on the charge, retention of this charge. So it brings us back to this very rarely. Does it occur that the full board reverses the AJ? The question on when such reversal takes place. And if, as we told you, it's perhaps a close question as to the difference of the grounds. The grounds that rely on by the full board in reversing the AJ. And rely on selected by the agency in charging him with breach. But your position, I take it, is that there need be no correlation between, let's say, the evidence presented at the trial before the AJ and the ground on which the full board makes its decision? Well, I'm not saying that there's no correlation. I'm saying viewing the reasons the agency gave as grounds or charges is a wrongful characterization of what happens in these types of cases. Because the board has to look at its jurisdiction, the only question is whether there has been a breach. And in this case, that meant whether there had been misconduct. So it didn't matter why the agency thought that Mr. Lizio's conduct constituted misconduct. For example, if the agency had said, Mr. Lizio, we're talking about what happened when you went to the general electric facility on April 6th. And we think it's misconduct because after hearing about it, your supervisor couldn't sleep all night. When it came to the administrative judge determining board jurisdiction, the administrative judge would have to determine whether Mr. Lizio's conduct at the facility, the GE facility, constituted misconduct. But we would hardly expect the administrative judge to say, well, since the agency used the standard of supervisory sleeplessness to characterize something as misconduct, we're bound by that standard, and we just have to see whether Mr. Lizio's supervisor slept that night or didn't. The board, the administrative judge would say, we think that a proper way to interpret the term misconduct is not relevant to whether or not someone's supervisor sleeps at night. We think it should be interpreted according to its plain and ordinary meaning. I was just trying to use it as an illustrative example to explain why the board can use its own interpretation of the term and is not restricted to the way the agency may or may not interpret it. If the administrative judge said something off the wall, then all right, we don't pay any attention to it. It would be helpful to stick with this case. The administrative judge didn't say anything off the wall. He made factual findings that the full board lived with. But the administrative judge erred because he believed that he had to interpret the term misconduct only according to the interpretation that the agency appeared to have been given it, as opposed to reviewing it de novo. And the full board said that was a mistake. We can look at this de novo. Yeah? Is this really a question of contract interpretation? Because the AJ looked at the same provision, whether the contract says he had to avoid any misconduct. And the AJ was looking at that term, misconduct. And the board was looking at that same term, misconduct. Right. So the AJ says, fine. The question here is whether he engaged in any misconduct. The agency says that the kind of misconduct that he engaged in was embarrassing the agency. So that's what I need to determine. Did he or did he not embarrass the agency? But the kind of misconduct is irrelevant because the last chance agreement doesn't preclude only certain kinds of misconduct. It precluded any misconduct. I don't know what it is. For example, let's suppose that what he did in this case was that he stole a car in the course of his official duties. And as he was driving off, he was yelling and screaming obscenities to people. And the obscenities came to light. And he was fired because he engaged in misconduct in all of these obscenities. And then during the course of events, it turns out that the evidence shows that, well, they weren't really obscenities. And really that charge cannot be sustained. But he stole a car. So that's enough. But his charge was only the obscenities. So is there – in other words, could he – he thinks that he has to establish that he didn't engage in any conduct related to obscenities. He puts on his case. He prevails in that case. But then the board says, no, no, that's okay. You stole a car. That's enough. Well, that would be the procedures before the board. The board has pretrial procedures that are for the purpose of flushing out exactly what the issues are going to be before the board. Those procedures – the board did have pretrial – pre-hearing procedures in this case. They were pre-hearing submissions on the jurisdictional issue initially. And then there were pre-hearing submissions before – there were jurisdictional statements when the appeal was first filed. And then there were pre-hearing submissions. It was clear from all of those submissions on both sides that everyone, both Mr. Luziano and the agency, understood that what was going to be disputed before the board was what happened the day that he went to the General Electric facility and that the issue before the board was whether that constituted a misconduct. In all of those papers, there was no mention by Mr. Luziano, no argument, that the – his conduct at the General Electric facility had to fit within the parameters of a certain Army regulation. He recognized in those papers that the issue was whether his conduct that day constituted misconduct. That's the issue before the board. I think you correctly articulated the law in the sense of certainly the board has to determine this jurisdiction and then it interprets contract provisions. But the difficulty I have is that this doesn't seem to be a case of contract interpretation because the way all of these cases seem to start rolling is you have a last-chance agreement and there are terms of the agreement. And typically the agency says, you breached the agreement because you did X. And you said, okay, you're out unless you can establish that you did not do X. So it's litigated on those terms. And that's kind of – that's – and here you had a broad misconduct. So obviously – so misconduct can be anything. So obviously the agency had to sort of tell the person what he did and the case was litigated on that basis. But then the board said something different. I mean, it said the conduct is very close, but it's – I guess what's a little bit troublesome is no fault of the agency. But the board then kind of moved the goalpost. Well, again – No fault of yours to the agency. I guess the only way that I can answer that is to say that the goalpost was always any misconduct. The goalpost is set by the – That's the goalpost. I agree with you. It's set that way in terms of the agreement. But then it's narrowed down once the agency says you breached because typically in a contract situation, you always tell the person what they did to breach. And when you have a broad general statement of misconduct, you probably have to tell the person exactly what they did that was the misconduct. Well, I don't necessarily agree with that. I don't want to concede that, but I will say that in this case, the agency – he was well aware that it was his conduct at the GE facility, not a car accident some other day. He was well aware that that's what it was. That's what he defended himself against and tried to present his statement of the facts before the board. And it was just a question of whether the facts of what happened that day constituted misconduct. And how did the board judge whether it constituted misconduct? Was it required to be limited to an Army regulation that happened to be cited? Or could the board look at the term misconduct, interpret it to no avail, and say this conduct, as found by the administrative judge, does constitute misconduct as that term is used in the last chance agreement? Thank you, Mr. Chairman. Thank you, Your Honor. Any questions? It would be a horrendous burden on any employee to have to intuit on his or her own precisely what conduct the agency has in mind when it brings adverse actions or when he or she has to go to a hearing. But there is only one set of activities relating to the conduct you're questioning here. True. And the conduct deals with— The only question is whether that conduct—it's not different kinds of conduct that occur on different occasions on different days. It's only one conduct that's in question. The only question is whether that conduct falls inside or outside that conduct. I'd say that the question is deeper than that because once you determine whether the conduct is embraced by the contract, you still have the issue of the potential property deprivation and the notice that the employee is entitled to before that can happen. But he knew that that conduct was considered by the agency to be a trigger onto the last chance agreement. And that's the conduct in question. And he had a right to come in and say, no, no, no, that conduct does not constitute misrepresentation. Correct. The conduct that the agency itself asserted was—the conduct that the agency itself asserted was the breach. It was the conduct that the employee responded to. His actions on the occasion identified. But the conduct that the board ultimately seized on, on appeal, was not conduct that in any way the agency seized on or gave him notice of. But wasn't it the same conduct? The AHA had a different interpretation because the AHA was looking at whether the standard of misconduct was causing embarrassment to the agency. Right. And the board said, no, no, no, that's not the standard misconduct. It's misconduct. That's what the contract says. And this conduct falls under that provision. Well, what would be the whole purpose of even arguing for jurisdiction before the board on the basis that I didn't breach the agreement? I was completely consistent with the agreement. And he knows nothing. He knows nothing about what the agency has any concerns about. He has to—the agency merely says, you committed misconduct. He has to say, make a non-frivolous claim, oh, no, I adhere to the agreement. What could he conceivably say to the board as a non-frivolous claim? He doesn't know what the breach is. The only way we find that out is if the agency tells us what it is. I have to rely upon what the agency says to me because I can't figure it out otherwise. So the agency tells me. I think Judge Lin is certainly correct that it was the same conduct in terms of events. What the A.J. said was the conduct didn't rise to the level that the agency charged it with. And the board then said that doesn't matter. It's enough that it be at a different level. Well, I see a quality— I mean, it's the same physical events. Yes, yes, they are, but I see a qualitative difference between conduct that embarrasses the agency versus conduct which is rude per se. We're missing the nexus with the rudeness, whereas in the conduct charged to the employee, not only was it the conduct, whatever it was, but the conduct had to have a nexus to an adverse effect on the reputation of the agency. That was the embarrassment to the agency factor. That is a material element of the case. If somebody is really rude or obnoxious per se and there's no demonstration of a link to adverse impact on the reputation of the agency, it's possible that people he is rude to think that he's rude, but the agency itself is exempt. That is a material term that's absent in the latter charge. The entire focus of the employee's defense before the Merit System Protection Board was fully focused on the embarrassment factor. There was no embarrassment, cross-examination, no embarrassment. We're proud of the Army. We love the Army. That's why he prevailed, and he had an entitlement to rely upon it. Otherwise, he becomes virtually an employee at will. If the board is interested in controlling its agencies, then they should have rescinded the matter and proposed its own remand. Let me ask you a question. No, you can do that. If we affirm this decision, Mr. Lizio is removed and that's the end of it. If we agree with you, what would happen? Would it go back and the original action would be reinstated and you'd go through all that? No. I thought about that. It would go back on remand with an instruction to the board not to consider this rooted obnoxious standard to review the A.J.'s decision as it should have, based on the grounds invoked by the agency. Or I suppose they could instruct the A.J. to hold another trial on the different standard, on the rooted obnoxious. Your Honor, that's correct, as long as we have notice. But there's a lot of water under the bridge here. Thank you very much.